Dan Whittemore State Controller Department of Administration 706 State Services Building
Dear Mr. Whittemore:
You have asked for an opinion concerning the applicability of C.R.S. 1973, 24-36-103 to institutions of higher education.
QUESTION PRESENTED AND CONCLUSION
Does C.R.S. 1973, 24-36-103 apply to institutions of higher education?
My conclusion is "yes."
ANALYSIS
Section 103(1) states that:
 It is the duty of every officer, department, institution, and agency of the state government charged with the responsibility of collecting the various taxes, licenses, fees, and permits imposed by law and of collecting or accepting tuition, rentals, receipts from the sale of property, and moneys of any other nature accruing to the State from any source whatsoever to transmit the same to the treasury department in such manner and under such procedure as may be prescribed by law or by fiscal rule of the controller.
Subsection (2) of Section 103, which operates as an exception to the general rule of subsection (1), provides that when a department, institution or agency collects or receives money of a trust or quasi-trust nature or from the operation of a business type enterprise, the agency or institution may, upon the written approval of the Controller and the State Treasurer, deposit said moneys in a state or national bank. The agency or institution is then required to file a quarterly report with the Controller reflecting the beginning balance, all transactions, and the closing balance.
You indicate in your letter that Colorado State University has taken the position that the Board of Agriculture can unilaterally establish bank accounts for revenues pledged to pay bonds, by virtue of Section 5(2) of Article VIII of the Colorado Constitution. Since subsection (2) of section 103 operates as an exception to the basic requirement of subsection (1), the first question is whether institutions of higher education are subject to the requirement of Section 103(1) that all moneys accruing to the state shall be deposited with the Treasury in accordance with the fiscal rules.
§ 5 of Article VIII of the Colorado Constitution was amended in 1972 (Laws 1972, p. 644). Among other changes, the following paragraph (2) was added:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
This amendment repealed Section 13 of Article IX, which read:
 The board of regents shall have the general supervision of the university, and the exclusive control and direction of all funds of, and appropriations to, the university.
Thus one of the primary effects of the amendment was to grant the control of all funds and appropriations to the governing boards of state institutions of higher education, unless otherwiseprovided by law. The issue resolves itself, then, into a question of whether the requirements of C.R.S. 1973, 24-36-103
are applicable to institutions of higher education as falling within the phrase "unless otherwise provided by law."
One must look for guidance on the resolution of this issue to the recent case of The Associated Students of the University ofColorado v. The Regents of the University of Colorado,et al., 189 Colo. 482, 543 P.2d 59 (1975). In that case the Board of Regents had adopted a rule providing for closed meetings of the Board under certain circumstances. The Open Meetings Law of the Colorado Sunshine Act provides in part that "All meetings of two or more members of any board . . . or other policy making body of any state agency or authority . . . are declared to be public meetings." The Court held that the Open Meetings Law did not fall within the phrase "unless otherwise provided by law," and thus did not apply to the Regents, reasoning that:
 This phrase operates so that any qualification of the constitutional grant is to be construed as divesting the supervision and control granted only when a legislative enactment expressly
so provides . . . . The phrase refers to the provisions of particular and special applicable laws . . . .
It should be noted that the Court found that the Open Meetings Law would infringe upon the Regents' authority to govern the University because the application of the law would invalidate a law of the Regents. There is no rule adopted by the Board of Agriculture which would conflict with the requirements of § 103(1). Thus there is a serious question as to whether the reasoning and holding of the Regents case is applicable in this instance. Assuming, for future guidance, that the Board were to adopt a rule exempting the Board from the requirements of 103 and 104, its validity would be doubtful in view of the provisions of S.B. 76 (Laws 1976, p. 583) which provides in part that:
 (8)(a) No rule shall be issued except within the power delegated to the agency and as authorized by law. A rule shall not be deemed to be within the statutory authority and jurisdiction of any agency merely because such rule is not contrary to the specific provisions of a statute. Any rule or amendment to an existing rule issued by any agency, including state institutions of higher education administered pursuant to title 23, C.R.S. 1973, which conflicts with a statute shall be void.
Even assuming the applicability of the Regents decision to the present issue, it is my opinion that the references in 103 to "every . . . institution . . . of the state government," and to the collecting of "fees" and "tuition," make the statute sufficiently specific to fall within the phrase "unless otherwise provided by law." The references to institutions and to fees and tuition are sufficient indication of legislative intent to apply the requirements of section 103 to moneys held or collected by the University to meet the requirements of the Regents
decision. Thus money "accruing to the state," which is held or collected by the University must be transmitted to the treasury unless written approval for a separate bank account has been previously obtained from the State Treasurer and the Controller pursuant to subsection (2) of section 103.
A question has been raised concerning the effect of the repeal of subsection (3) of § 103, which read:
 (3) Nothing in this section shall be construed to deprive the Regents of the University of Colorado of the exclusive control and direction of all funds of and appropriations to the University, the provisions hereof being intended only to provide for the safe custody and proper preservation thereof.
This paragraph was repealed in 1975 (Laws 1975, p. 216). Prior to its repeal it served as an additional indication that the provisions of 103 applied to the Regents of the University. It appears to have stated a legislative conclusion that there was no conflict between the provisions of Section 103 and Section 13 of Article IX, thus preserving the constitutionality of the statute. While one cannot ascertain conclusively the legislative intent behind the repeal of this sentence, it would appear that such a clarifying statement was no longer necessary in view of the 1972 amendment to Article VIII, § 5(2), qualifying the Regents' authority by the phrase "unless otherwise provided by law." Its repeal was therefore merely the removal of an obsolete provision.
SUMMARY
Consequently it is my opinion that the requirements of 24-36-103
apply to institutions of higher education, and specifically to proceeds from the sale of bonds and the revenue pledged to pay off those bonds.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER PUBLIC FUNDS TREASURER, STATE
C.R.S. 1973, 24-36-103
Colo. Const. art. VIII, § 5(2)
ADMINISTRATION, DEPT. OF Accounts Control Div. of AGRICULTURE, STATE DEPT. TREASURY, DEPT. OF
Colorado State University is required by law to transmit all moneys that it collects or holds to the state treasurer unless a separate account is approved by the state treasurer and controller. The constitutional authority of the Board of Agriculture to control the university's finances was properly limited by the legislature.